# IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

NICOLE COLLINS, ET AL.,      *
individually and on behalf of     *
others similarly situated      *
                                     *
           Plaintiffs       *
                                     *      NO: 4:12CV00685  SWW
V.                            *
                                   *
BARNEY'S BARN, INC.,       *
individually and d/b/a PEACHES
GENTLEMAN'S CLUB, ET AL.

           Defendants

## ORDER

       Plaintiffs Nicole Collins, Casi Hudson, Rachel Hillman, Stacy Jackson,

Chris Cruthis, Marcus Stevens, and Erin Townsend, former employees of Barney's

Barn, Inc. ("Barney's"), doing business as Peaches Gentleman's Club ("Peaches"),

bring this putative collective action against Barney's and individual managers of

Peaches pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et*

*seq*.  In addition to asserting claims under the FLSA, Plaintiffs bring supplemental

state law claims for unjust enrichment and claims pursuant to the Arkansas

Minimum Wage Act ("AMWA").  Before the Court is Plaintiffs' motion seeking

(1) conditional certification of a collective action under 29 U.S.C. § 216(b),  (2)

equitable tolling, (3) an order compelling disclosure of contact information for

potential opt-in plaintiffs, and (4) approval of notice to potential opt-in plaintiffs.

The time for responding has passed, and defendants have not filed a response.

After careful consideration, and for reasons that follow, the motion for conditional

certification is denied without prejudice,[1] the motion for equitable tolling is denied,

and the motions for contact information and approval of notice are denied as moot.

## I.  Background

Plaintiffs worked at Peaches, a private club in Jacksonville, Arkansas.

Collins, Hillman, and Jackson worked as dancers; Hudson worked as a dancer, a

non-lead bartender, and a waitress; Cruthis worked as a bouncer; Stevens worked

as a disc jockey and assistant manager, and Townsend worked as a lead bartender.

For their dancing, Collins, Hillman, and Jackson (collectively, the "Dancer

Plaintiffs") earned money solely from tips.  They allege that Defendants classified

them as zero-wage independent contractors and never paid them an hourly wage,

even though Defendants controlled almost every detail of their work.   The Dancer

Plaintiffs contend that they were entitled to FLSA-mandated compensation for

"tipped employees,"[2]  including a minimum hourly wage and overtime

---

[1]For reasons explained in this order, the Court denies Plaintiffs' motion to conditionally
certify multiple classes in this case.   However, the Court would consider a renewed motion for
conditional certification of a single class composed of current and former exotic dancers,
provided that such a motion is supported by a showing that similarly-situated potential plaintiffs
exist, who are interested in joining a collective action.

[2]The FLSA generally requires employers to pay employees a minimum wage, currently
set at $7.25 per hour.  *See* 29 U.S.C. § 206.  However, an exception exists for a "tipped

compensation.  The Dancer Plaintiffs further charge that Defendants violated the

FLSA by requiring them to pay  a portion of their tips to "the house" and other

employees who did not receive tips.

In addition to dancing at Peaches, Hudson worked as a non-lead bartender

and a waitress, and she earned $2.00 per hour.  Like the Dancer Plaintiffs, Hudson

claims that Defendants failed to pay her in conformity with FLSA requirements for

"tipped employees."  Defendants paid Cruthis, Stevens, and Townsend

(collectively, the "Non-Dancer Plaintiffs") a flat fee for each shift they worked,

regardless of the number of hours worked.  The Non-Dancer Plaintiffs claim that

Defendants failed to pay them minium wage and overtime compensation as

required under the FLSA.

## II.  Motion for Conditional Certification of a Collective Action

Plaintiffs wishing to sue on behalf of a class under the FLSA must utilize the

opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class

procedures provided under Federal Rule of Civil Procedure 23.  *See Mooney v.*

*Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other*

---

employee," defined as one "engaged in an occupation in which he customarily and regularly
receive more than $30 a month in tips."  29 U.S.C. § 203(t).  Tipped employees must receive at
least the minimum wage, but employers are permitted to pay a direct wage of $2.13 per hour and
take a "tip credit" to meet the $7.25 per hour minimum wage requirement.  *See* 29 U.S.C.
§ 203(m).

*grounds by Desert Palace Inc. v. Costa*, 539 U.S. 90 (2003).  Section 216(b)

provides for a class action where the complaining employees are "similarly

situated."  *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th

Cir. 2001).  Unlike class actions under Federal Rule of Civil Procedure 23, "'[n]o

employee shall be a party plaintiff to any such action unless he gives his consent in

writing to become such a party and such consent is filed in the court in which such

action is brought.'"  *Id.* (quoting § 216(b)).  District courts have discretionary

power "in appropriate cases" to authorize the sending of notice to potential class

members in a collective action.  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165,

169 (1989).  In determining whether an opt-in case is appropriate for court-

authorized notice, the central question is whether plaintiffs have established that

they and the putative class members are "similarly situated" for purposes of

§ 216(b).  *See Thiessen*, 267 F.3d at 1102; *Severtson v. Phillips Beverage Co.*, 137

F.R.D. 264, 265-67 (D. Minn. 1991).

       This Court has adopted the basic framework of the two-tiered *ad hoc*

approach outlined in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir.

1995), *overruled on other grounds by Desert Palace Inc. v. Costa*, 539 U.S. 90

(2003), for determining whether plaintiffs and absent class members are similarly

situated.  *See Musticchi v. City of Little Rock*, No. 4:08cv00419 SWW (E.D. Ark.

Feb. 2, 2009)(order granting conditional class certification).  The approach set

forth in *Mooney* is as follows:

> The first determination is made at the so-called "notice
> stage."  At the notice stage, the district court makes a
> decision – usually based only on the pleadings and any
> affidavits which have been submitted – whether notice of
> the action should be given to potential class members.
>
> Because the Court has minimal evidence, this determination
> is made using a fairly lenient standard, and typically results
> in "conditional certification" of a representative class.  If
> the district court "conditionally certifies" the class, putative
> class members are given notice and the opportunity to "opt-
> in."   The action proceeds as a representative action
> throughout discovery.
>
> The second determination is typically precipitated by a
> motion for "decertification" by the defendant usually filed
> after discovery is largely complete and the matter is ready
> for trial.   At this stage, the court has much more
> information on which to base its decision, and makes a
> factual determination on the similarly situated question.  If
> the claimants are similarly situated, the district court allows
> the representative action to proceed to trial.   If the
> claimants are not similarly situated, the district court
> decertifies the class, and the opt-in plaintiffs are dismissed
> without prejudice.  The class representatives – *i.e.* the
> original plaintiffs – proceed to trial on their individual
> claims.

54 F.3d at 1213-14 (internal footnote omitted).

At the "notice stage," the Court makes an initial determination, under a

lenient standard, whether the named plaintiffs and the putative class members are

"similarly situated."  The plaintiff bears the burden of proof at this stage, and "'can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  *Wheeler v. Baxter Healthcare Corp*., No. 4:11CV00263 JLH, 2011 WL 5402446, *2 (E.D. Ark. Nov. 8, 2011)(quoting *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007)). Plaintiffs can satisfy their burden by presenting detailed allegations supported by affidavits, but they "may not meet this burden through unsupported assertions of additional plaintiffs and widespread FLSA violations.'"  *Littlefield v. Dealer Warranty Servs ., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010)(citation omitted).

This Court also requires that named plaintiffs make a preliminary factual showing that similarly-situated potential plaintiffs actually exist.  *See Musticchi v. City of Little Rock*, No. 4:08cv00419 SWW (E.D. Ark. Feb. 2, 2009)(order granting conditional class certification at 6).  "Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse."  *White v. Osmose, Inc*., 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002).  "The courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through

unwarranted solicitation," *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991), and "an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'anna v. M/A-Com, Inc*., 903 F. Supp. 889, 894 (D. Md. 1995).

Additionally, this Court agrees with those courts that require evidence that other similarly-situated individuals desire to opt into the litigation. *See Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir. 1991); *Alvarez v. Sun Commodities, Inc*., 2012 WL 2344577, *2 (S.D. Fla. 2012); *Johnson v. VCG Holding Corp*., 802 F. Supp.2d 227, 239 (D. Me. July 25, 2011); *McKnight v. D. Houston, Inc*., 756 F. Supp. 2d 794, 805 (S.D. Tex. 2010); *Salazar v. Agriprocessors, Inc*., 2008 WL 782803 (N.D. Iowa 2008); *Saxton v. Title Max of Alabama, Inc*., 431 F. Supp. 2d 1185, 1187 (N.D. Ala. 2006). The Court recognizes that district courts within the Eighth Circuit differ as to whether and by what means a plaintiff must demonstrate that similarly-situated individuals are interested in joining the proposed collective action. *See e.g.*, *Ford v. Townsends of Ark., Inc.,* 4:08CV00598 BSM*,* 2010 WL 1433455, *5 (E.D. Ark. April 9, 2010)(no showing required)(citing *Helmert v. Butterball*, No. 4:08CV00342 JLH, 2009 WL 5066759, at *3 (E.D.Ark. Dec. 15, 2009)); *Musticchi v. Little Rock*, No.

4:08CV00419 SWW (E.D.Ark. Feb. 2, 2009) (showing required);[3] *Robinson v.*

*Tyson Foods, Inc.*, 254 F.R.D. 97 (S.D. Iowa 2008) (showing required); *Kautsch v.*

*Premier Communications*, 504 F. Supp.2d

685 (W.D. Mo.2007) (no showing required).   However, this Court continues to

find that plaintiffs must do more than speculate that putative opt-in plaintiffs would

be interested in joining a collective action.  Without such a requirement, the parties

and the Court could waste valuable resources issuing notice to potential plaintiffs[4]

only to find that the case cannot proceed as a collective action.   *See Parker v.*

*Rowland Express, Inc*., 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007)(stating that "a

plaintiff must do more than show the mere existence of other similarly situated

persons because there is no guarantee that those persons will actually seek to join

the lawsuit"); *see also Bouaphakeo v. Tyson Foods, Inc*.  564 F. Supp. 2d 870, 892

(N.D. Iowa 2008)(citation and internal quotation marks omitted)("[O]ther's interest

in joining the litigation is relevant to whether or not to put a defendant employer to

the expense and effort of notice to a conditionally certified class of claimants.").

---

[3]In *Musticchi v. City of Little Rock*, No. 4:08cv00419 SWW (E.D. Ark.), this Court found that the plaintiff made a sufficient showing that similarly-situated individuals desired to "opt in" based on the submission of several consent forms by opt-in candidates and the named plaintiff's representation that others had expressed an interest in opting in.   *See Musticchi, ECF No. 26(*order granting conditional class certification at pages 7-8).

[4]The effectiveness of a collective action under the FLSA depends on accurate and timely notice to potential opt-in plaintiffs, and considerable time, effort, and litigation is often devoted to issues regarding the content an transmission of court-approved notice.

The Court now turns to the merits of Plaintiffs' motion.  In an effort to show that conditional certification is appropriate, several plaintiffs have provided affidavits.  Hudson testifies that she worked twelve-hour shifts at Peaches six days a week, from October 2007 through October 2009 and March 2010 through mid-August 2010.  *See* ECF No. 6-1 (Hudson Aff., ¶7).  Hudson took drink orders, prepared and served drinks, and performed clean up duties after the club closed. For these services, Hudson received $2.00 per hour, but if the "drawer was short," her pay was reduced.   Hudson testifies that she requested that Defendants provide her information necessary for her personal income tax filings, but she never received the requested tax forms.

Hudson provides no specific information regarding similarly-situated potential plaintiffs who desire to join a collective action, but she states:

> I know that there are other bartenders, waitresses, and dancers out there who used to work or still work for Peaches that are being treated the same way. The non-lead bartenders and waitresses at Peaches were always paid $2.00 an hour for their work–this was company policy.

ECF No. 6-1 (Hudson Aff., ¶17).

Hudson also worked as a dancer, performing on stage and providing personal "lap dances" for customers.[5]   She states that Defendants required her to

---

[5]Hudson reports that Defendants set the price she charged for lap dances.

pay "shift fees" each night that she worked, presumably from tips that she received from customers.  Hudson states that she paid between $25 to $50 to "the house," and she was strongly encouraged to pay "tip-outs" to the disc jockeys and bouncers.   Hudson testifies that if a disc jockey thought she had short-changed him on tips, he would "extort" higher tip-outs from her.

Hudson provides a detailed account of oppressive working conditions and an employer that controlled almost every detail of her dancing activities.   According to Hudson, Peaches' dancer turn-over rate was high, and during her time at Peaches she and approximately fifty other dancers were subject to the same "rules, requirements, and financial controls."  ECF No. 6-1 (Hudson Aff., ¶¶ 21-23). However, Hudson provides no information regarding other current or former dancers interested in joining this lawsuit.[6]

Townsend testifies that she worked as a lead bartender at Peaches from October 2007 through June 2009.  Townsend states that she worked from 5:00 p.m until 6:00 a.m., five nights a week.  She reports that Defendants paid her $44 per

---

[6]Plaintiffs also submit the affidavit of Kalie Brown, a named plaintiff in a prior, related lawsuit: *Brown v. Barney's Barn, Inc.*, No. 4:11CV00224 SWW.  Brown originally submitted her affidavit in support of a motion for conditional certification in case number 4:11CV00224 SWW.  However, before the Court could rule on that motion, Brown moved to dismiss her claims, which are identical to the Dancer Plaintiff claims in this case, with prejudice.  The Court granted Brown's motion to dismiss with prejudice.  Accordingly, Brown is not an opt-in candidate in this case.

work shift, and they refused to pay her for  "opening duties," which included

cleaning, preparing food, and unloading delivery trucks.  According to Townsend,

the pay she received per shift was considerably less than the federal minium wage,

and Defendants refused to provide her information necessary for filing personal

income tax returns.  Townsend provides no testimony regarding other individuals

who worked as lead bartenders at Peaches.

Stevens testifies that he worked as a manager, a disc jockey, and a bouncer

at Peaches from 2008 through 2010.  He reports that he began as a bouncer and

later became a disc jockey and a "jack-of-all trades assistant manager, doing

everything the business needed . . . . " ECF 6-1 (Stevens Aff., ¶ 12).  Stevens

generally worked shifts that lasted more than twelve hours, five to six nights per

week.

Stevens reports that when he worked as a bouncer, Defendants paid him $65

per shift, regardless of hours worked; and when he became an assistant manager,

he earned $75 per shift, regardless of hours worked.

Cruthis testifies that he worked as a bouncer at Peaches from "2008 through

April 12, 2010, six to seven days a week from 5:00 p.m until 6:00 a.m., and

Defendants paid him $65 per shift, regardless of hours worked.  Cruthis states that

all Peaches bouncers earned the same  $65 per shift fee, with no overtime.  Neither

Stevens nor Cruthis identify other Peaches employees who have an interest in

joining a collective action, but they both provide the following statement:

> Based upon my conversations with other dancers, bartenders, security
> guards, and other employees of Peaches, I know that [there] are other
> employees and former employees who would join this lawsuit if they
> received a notice about it.

*Id*. (Cruthis Aff., ¶ 27)(Stevens Aff., ¶ 48).

Several non-conclusive factors may be considered in determining whether

persons similarly situated to the named plaintiffs exist: (1) whether the plaintiffs

hold the same job title; (2) whether they worked in the same geographic location;

(3) whether the alleged violations occurred during the same time period; (4)

whether the plaintiffs were subjected to the same policies and practices; and (5) the

extent to which the acts constituting the alleged violations are similar.  *See*

*Wheeler v. Baxter Healthcare Corp.*, No. 4:11CV000263 JLH, 2011 WL 5402446,

*2 (E.D. Ark. Nov 8, 2011).

Here, although the named plaintiffs all worked at Peaches, they performed

different jobs and some performed multiple jobs.  Additionally, Plaintiffs were

subject to different policies and practices depending on their job classification.  For

example, the Dancer Plaintiffs received tips only, and they were "strongly

encouraged" to share those tips with the Non-Dancer Plaintiffs, the Non-Dancer

Plaintiffs received a flat fee per shift, and bartenders and waitresses received

12

hourly pay.

Plaintiffs propose that differences in plaintiffs' job duties and pay can be managed through the certification of three separate opt-in classes:  (1) a class consisting of exotic dancers who worked at Peaches for tips any time after March 8, 2008;  (2) a class consisting of bouncers, DJ's, managers, and lead bartenders, who worked at Peaches any time after November 1, 2009 and received a flat fee of $75.00 or less for their services; and (3) a class consisting of all non-lead bartenders, waitresses, and others who worked at Peaches any time after November 1, 2008 and received less than $2.12 per hour for their services.  However, even if the case proceeded as three collective actions joined in one lawsuit, individual inquiries would be required to determine the class to which a plaintiff belongs.  This task would be especially demanding in the case of a plaintiff who, like Hudson, worked in multiple capacities and received pay under different pay systems.  In addition, the Dancer Plaintiffs' claim that Defendants required them to share tips is entirely separate from the minimum wage and overtime claims pursued by all plaintiffs,[7] and the Dancer Plaintiffs' allegation that non-dancer personnel used coercive means to "extort" tips from them indicates that conflicts

---

[7]Under the FLSA, if an employer requires tipped employees to share tips with other employees who do not customarily receive tips, the employer is not permitted to take a "tip credit."  *See* 29 U.S.C. § 203(m).

13

may arise between the proposed classes.

Considering the dissimilar allegations and claims of the named plaintiffs, the Court finds that they have failed to show that they are similarly situated to each other or to putative class members.  The Court further finds that dividing plaintiffs into three different classes would not lead to efficient adjudication and that significant dissimilarities among class members would remain.  Although the Court declines to conditionally certify multiple classes, the Court will consider certification of a class composed solely of current and former Peaches dancers, who claim that Defendants improperly classified them as zero-wage independent contractors.  Viewing the claims of the Dancer Plaintiffs in isolation, the Court finds that they have demonstrated that they and other similarly-situated dancers were victims of a common policy that violated the FLSA.  However, conditional certification will be denied at this time because the Dancer Plaintiffs have failed to demonstrate the existence of similarly-situated employees who desire to join this lawsuit. "The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself [to warrant the creation of a collective action]." *Guerra v. Big Johnson Concrete Pumping, Inc*., No. 2:05CV14237, 2006 WL 2290512, *10 (S.D. Fla. May 17, 2006).   This ruling does not preclude the Dancer Plaintiffs from seeking

14

conditional certification based on supplemental evidence that other similarly-situated individuals have an interest in joining a collective action.

### III.  Motion for Equitable Tolling

Plaintiffs ask the Court to toll the statute of limitations for potential opt-in plaintiffs.  The FLSA statute of limitations requires that claims for violations be "commenced within two years after the cause of action accrued," unless the violation was "willful." 29 U.S.C. §255(a). If an employer's violation is willful, the Act extends the statute of limitations to three years. *Id.*   An action is commenced under the FLSA when a party files suit, *see* 29 U.S.C. § 256(a), but in the case of a collective action, if a party's name does not appear on the complaint, the action is commenced when that party files his or her written consent to become a part of the collective action.  *See* 29 U.S.C. § 256(b).

A plaintiff seeking equitable relief from a statute of limitations shoulders the burden to show (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). The doctrine of equitable tolling should be used sparingly, *see Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453  (1990), and invoked "only in exceptional circumstances truly beyond the plaintiff's control." *Jenkins v. Mabus,* 646 F.3d 1023, 1028 -1029

15

(8th Cir. 2011)(citations omitted).  A plaintiff bears the burden of demonstrating why he is entitled to equitable tolling, and the resolution of the issue is fact-specific. *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir.1998).

Here, Plaintiffs assert that equitable tolling is proper in this case based on the serious charges made in the complaint and because "Defendants were put on notice of their violations . . . no later than February 11, 2011 . . . . " ECF No. 7, at 22.  The Court finds that Plaintiffs have failed to demonstrate that exceptional circumstances exist in this case that warrant equitable tolling.  Accordingly, the motion is denied.

## IV.  Conclusion

For the reasons stated, Plaintiffs' motions for conditional certification (docket entries #6, #16) are DENIED WITHOUT PREJUDICE,  Plaintiffs' motion for equitable tolling (docket entry #6) is DENIED, and Plaintiffs' motions for the production of contact information and approval of notice (docket entry #6) are DENIED AS MOOT.

IT IS SO ORDERED THIS 17th DAY OF APRIL, 2013.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE