**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

NICOLE COLLINS, ET AL., individually and on behalf of others similarly situated

Plaintiffs

V.

BARNEY'S BARN, INC., individually and d/b/a PEACHES GENTLEMAN'S CLUB, ET AL.

Defendants

NO: 4:12CV00685 SWW

**ORDER**

Seven former employees of Barney's Barn, Inc. ("Barney's"), doing business as Peaches Gentleman's Club ("Peaches"), bring this action under the Fair Labor Standards Act ("FLSA") against Barney's and two individuals, Danny Martindill and Casey Martindill, who managed Peaches.[1] On July 7, 2014, the Court held a hearing on damages, and on July 25, 2014, the parties submitted post-trial briefs. After careful consideration, and for reasons that follow, the Court makes the following findings and fact and conclusions of law and enters judgment for Plaintiffs.

**I.**

[1]Plaintiffs also named Michael Jones as a defendant, but they did not effectuate service of process, thus Jones is not a party.

Plaintiffs worked at Peaches, a private club in Jacksonville, Arkansas, and they claim that Defendants failed to pay them a minimum wage and overtime as required under the FLSA.[2] By previous order, the Court granted Plaintiffs' motion for sanctions and deemed admitted the following facts, which are set forth in the complaint and constitute the Court's findings of fact.

Plaintiffs Nicole Collins ("Collins"), Rachel Hillman ("Hillman"), Stacy Jackson ("Jackson"), and Casi Hudson ("Hudson") (collectively, the "Dancer Plaintiffs") worked as exotic dancers at Peaches. Hudson also worked as a waitress and a bartender at Peaches for a period of time during her employment. The Dancer Plaintiffs worked more than forty hours per week, they earned money from solely from tips, and they paid a "shift fee" of $20 to $30 each night that they worked. Peaches classified the Dancer Plaintiffs as zero-wage independent contractors. By previous order, however, the Court granted Plaintiffs' partial motion for summary judgment and found, as a matter of law, that the Dancer Plaintiffs worked as employees, not independent contractors. *See* ECF No. 42.

Plaintiffs Chris Cruthis ("Cruthis"), Marcus Stevens ("Stevens") and Erin Townsend (Townsend) (collectively, the "Non-Dancer Plaintiffs") worked at Peaches as a bouncer, a disc jockey, and a bartender, respectively. The Non-Dancer Plaintiffs worked

---

[2]The FLSA generally requires an employer to pay an employee a minimum hourly wage of $7.25 per hour and overtime at the rate of one and one-half times the employee's normal hourly rate for all hours worked in excess of a 40-hour week. *See* U.S.C. § 207(a)(1).

at Peaches more than forty hours per week, and Defendants paid them a flat fee per shift, which fell short of FLSA minimum wage and overtime requirements.

Each Plaintiff seeks damages equaling the required minimum wages for the hours they worked, less any money they were paid, plus overtime and liquidated damages. Additionally, the Dancer Plaintiffs seek to recover the shift fees that Defendants required them to pay.

Facts regarding the dates of Plaintiffs' employment at Peaches, the number of hours they worked per week, the pay they received, and the shift fees they paid, which are deemed admitted, follow.

- Collins worked at Peaches for 104 weeks, from November 1, 2009 to October 31, 2011, and she worked an average of 70 hours per week, for a total 7,280 hours. She received no hourly wages and paid Defendants an average of $25.00 per shift, six shifts per week, or a total of $150.00 per week.

- Hillman worked at Peaches for 43 weeks, from November 1, 2009 to March 31, 2010 and from July 1, 2010 to November 30, 2010, and she worked an average of 72 hours per week, for a total 3,096 hours. She received no hourly wages and paid Defendants an average of $25.00 per shift, six shifts per week, or a total of $150.00 per week.

- Jackson worked at Peaches for 25 weeks, from November 1, 2009 through May 31, 2010, and she worked an average of 66 hours per week, for a total 1,650 hours. Jackson received no hourly wages and paid Defendants an average of $25.00 per shift, six shifts per week, or a total of $150.00 per week.

- Hudson worked at Peaches for 22 weeks, from March 1, 2010 through July 31, 2010, and she worked an average of 72 hours per week, for a total 1,584 hours. Hudson worked as a dancer, a waitress, and a bartender. For her work as a waitress and bartender, Hudson earned $22 per shift, for a total $2,904. Hudson paid Defendants an average of $25 per shifts when she

worked as a dancer, and she danced, on average, four nights per week. Therefore, over the 22 weeks that Hudson worked for Defendants, she paid them approximately $2,200.

- Cruthis worked at Peaches from November 1, 2009 through April 12, 2010, and he worked an average of 78 hours per week during the 23 weeks that he was employed at Peaches, for a total 1,794 hours. Cruthis worked six to seven shifts per week at $65.00 per shift. Therefore, Defendants paid Cruthis an average of $422.50 per week, or a total of $9,717.50.

- Stevens worked at Peaches from November 1, 2009 through September 15, 2010, and he worked an average of 78 hours per week during the 45 weeks that he was employed at Peaches, for a total 3,510 hours. Stevens worked an average of six shifts per week at $75.00 per shift. Therefore, Defendants paid Stevens an average of $450.00 per week, or a total of $20,250.

- Townsend worked at Peaches from November 1, 2009 through June 15, 2010, and she worked an average of 58 hours per week during the 22 weeks that she was employed at Peaches, or a total of approximately 1,276 hours. Townsend worked an average of five shifts per week at $44.00 per shift. Therefore, Defendants paid Townsend an average of $220.00 per week, or a total of $4,840.00.

## II.

After careful consideration of the evidence presented at the hearing on damages and the parties' post-trial briefs, the Court makes the following findings of fact and conclusions of law.

First, the Court finds that during the relevant time period, Barney's was "an enterprise engaged in commerce" as defined under 29 U.S.C. § 206(a)[3] and was a covered

[3]An employee is covered under the FLSA's rules if he or she is either (1) "engaged in commerce or in the production of goods for commerce" or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several states or between any state and any place outside thereof[,]" 29 U.S.C. § 203(b), and "enterprise" means the related activities performed by any person or persons for a common business purpose. *See* 29 U.S.C. § 203(r)(1). The Act further provides that an

employer subject to FLSA minimum wage and overtime requirements.

Second, the Court finds that during the relevant time period, Danny Martindill and Casey Martindill served as Plaintiffs' employers within the meaning of the FLSA. An "employer" subject to liability under the Act is defined broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under this definition, an employee may have multiple employers subject to FLSA liability. *See Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir.1983). The Eighth Circuit has not articulated a exact standard for determining whether an individual is an employer under the FLSA but has noted that consistent with the Act's broad definition of "employer," the economic realities of a working relationship control whether an entity or individual functions as a FLSA employer. *See Blair v. Wills,* 420 F.3d 823, 829 (8th Cir. 2005)(citing *Goldberg v. Whitaker House Coop., Inc*., 366 U.S. 28, 33, 81 S.Ct. 933 (1961)).

---

"'[e]nterprise engaged in commerce or in the production of goods for commerce' means an enterprise that—(A)(I) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . . "

The facts deemed admitted in this case include that during the relevant time period, Barney's owned and operated a nightclub that engaged in interstate commerce, utilized and sold goods that moved in interstate commerce, and had annual gross revenues exceeding $500,000.

During Plaintiffs' employment at Peaches, Danny Martindill was the sole owner of Barney's and the owner of the building in which Peaches operated. The testimony at trial demonstrated that he hired, supervised, and terminated Peaches employees, and he made decisions regarding employee compensation, including the decision to label the Dancer Plaintiffs independent contractors. The Court finds it clear that Danny Martindill qualifies as Plaintiffs' employer under the FLSA.

Casey Martindill was married to Danny Martindill during the relevant time period, and she took an active role in the day-to-day management of the nightclub. Although she and several Plaintiffs described her role at Peaches as that of an "encourager" or "house mom," the hearing testimony revealed that she supervised, controlled, and even terminated Peaches employees.

Casey Martindill testified that she had no ownership interest in Barney's. However, the FLSA's definition of employer is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir.1993) (quoting *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194–95 (5th Cir.1983)). The evidence shows that in addition to having supervisory control over employees, Casey Martindill made decisions regarding employee compensation. Marcus Stevens, who had management duties at Peaches, testified that occasionally, Danny or Casey Martindill directed him to fine dancers for infractions such

as tardiness or not showing up for work and that either Casey or Danny paid Peaches bartenders and waitresses directly. Furthermore, Casey Martindill testified that if business were slow, she and Danny would waive the dancers' shift fees. Considering the totality of the circumstances, the Court finds that Casey Martindill qualifies as an "employer" subject to liability under the FLSA.

Third, the Court finds that Defendants willfully violated the FLSA and that Plaintiffs are entitled to damages accruing on or after November 1, 2009. The FLSA imposes a two-year statute of limitations, but if an employer has "willfully" violated the FLSA, limitations period is extended to three years. *See* 29 U.S.C. §255(a). An employer acts "willfully" when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe* Co., 108 S. Ct. 1677, 1681 (1988).

Danny Martindill testified that he "always understood" that an employer had to pay tipped employees "over $2.13 an hour" but that he had workers sign a piece of paper stating that they were independent contractors. He testified: "So in my mind, I didn't consider them employees." Martindill's testimony revealed that he lacked a reasonable basis for believing that all Peaches' employees– bartenders, dancers, bouncers, and waitresses--were independent contractors. When asked whether he relied on his own understanding of whether an employee qualified as an independent contractor, Martindill replied: "I - - it's kind of basically everybody did the same thing." Martindill's testimony reveals that he knew about the FLSA's wage requirements and that he

intentionally or recklessly circumvented those requirements by labeling Peaches' employees independent contractors without a valid basis.

Fourth, the Court finds that Defendants are not entitled to a "tip credit." An exception to the minimum wage requirement exists for a "tipped employee," defined as one "engaged in an occupation in which he customarily and regularly receive more than $30 a month in tips." 29 U.S.C. § 203(t). Tipped employees must receive at least the minimum wage, but employers are permitted to pay a direct wage of $2.13 per hour and take a "tip credit" to meet the $7.25 per hour minimum wage requirement. *See* 29 U.S.C. § 203(m). However, in order to utilize the tip credit provision, an employer must inform the employee that it is using the credit, and all tips received by the employee must be retained by the employee or pooled among employees. *See* 29 U.S.C. § 203(m). In this case, Defendants treated Plaintiffs as independent contractors and did not inform them that their tips would be used as a credit against the minimum wage.

Fifth, the Court finds that the FLSA does not entitle the Dancer Plaintiffs to recover shift fees that they paid Defendants during their employment. The Dancer Plaintiffs argue that Defendants' practice of charging a shift fee violates 29 C.F.R. § 531.52,[4] a Department of Labor ("DOL") regulation issued in 2011, which provides that

---

[4]The full text of the regulation reads as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity. Tips are the property of the employee whether or not the

tip money is the property of the employee, whether or not the employer has taken a tip credit, and the employer is prohibited from using an employee's tips for any reason other than the tip credit or in connection with a valid tip pool.

The Court finds that 29 C.F.R. § 531.52 has no application to the facts in this case. Plaintiffs' counsel characterizes the shift fees at issue as "illegal tip exactions" or "tip-out" fees, but the hearing testimony made clear that the Dancer Plaintiffs paid a fixed fee of $25 for a weekday shift and $50 per shift on Fridays and Saturdays, *regardless* of the total tips they collected. There is simply no evidence that Defendants collected, retained, or used the Dancer Plaintiffs' tip money.

Even if the shift fee at issue were in some manner related to the Dancer Plaintiffs' tips, the absence of statutory language regarding an employer's use of tips when no tip credit is taken calls into question the validity of 29 C.F.R. § 531.52. The FLSA imposes conditions on tip sharing or tip pooling *only* when an employer utilizes the tip credit provision to satisfy the minimum wage requirement, *see* 29 U.S.C. § 203(m), but §

---

> employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool. Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips.

29 C.F.R. § 531.52

531.52 imposes a freestanding rule governing an employer's conduct as to tip money, regardless of whether the tip credit is utilized. The Supreme Court has made clear that an employment practice does not violate the FLSA unless the FLSA specifically prohibits the practice, see *Christensen v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655 (2000), and it is far from clear that the DOL acted within its authority in promulgating 29 C.F.R. § 531.52. *See Oregon Rest. & Lodging v. Solis*, 948 F. Supp. 2d 1217, 1224–27 (D. Or. 2013)(finding 29 C.F.R. § 531.52 invalid); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 562 (S.D.N.Y. 2013)(questioning the validity of 29 C.F.R. § 531.52).

Sixth, the Court finds that Plaintiffs are entitled to liquidated damages. The FLSA provides for liquidated damages equal to the amount of actual damages, and liquidated damages are mandatory absent a showing of good faith. *Jarrett v. ERC Properties, Inc*. 211 F.3d 1078, 1083 (8th Cir. 2000). The award of liquidated damages is not considered punitive, but is "intended in part to compensate employees for the delay in payment of wages owed under the FLSA." *Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir.1990).

To avoid an award of liquidated damages, the employer bears the burden of establishing, by "plain and substantial" evidence, both subjective good faith and objective reasonableness. *Chao v. Barbeque Ventures*, L.L.C., 547 F.3d 938, 941–942 (8th Cir.2008)(quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir.1999)). The Eighth Circuit has noted that if an employer willfully violates the FLSA, "it is hard to mount a serious argument" that the employer acted in good faith. *See Jarrett v. ERC*

*Properties, Inc.*, 211 F.3d 1078, 1084 (8th Cir. 2000). In this case, the Court finds that Defendants failed to offer any evidence that they acted in good faith or with reasonable grounds for believing that the employment compensation practices at issue complied with the mandates of the FLSA.

**III.**

Based on the foregoing findings of fact and conclusions of law, Plaintiffs' damages are as follows.

(1) Defendants are jointly and severally liable to Marcus Stevens for a total $22,809.60, which includes the following:

| $ 13,050 | 40 regular hours per week at $7.25 per hour for 45 weeks, plus |
|---|---|
| $ 18,604.80 | 38 hours of overtime per week at $10.88 per hour for 45 weeks, less |
| < $20,250> | $450 per week in wages paid for 45 weeks |
| $ 11,404.80 | Total wages and overtime, plus |
| $ 11,404.80 | Liquidated damages |
| $22,809.60 | Total damages |

(2) Defendants are jointly and severally liable to Chris Cruthis for a total $12,923.24, which includes the following:

| $ 6,670 | 40 regular hours per week at $7.25 per hour for 23 weeks, plus |
|---|---|
| $ 9.509.12 | 38 hours of overtime per week at $10.88 per hour for 23 weeks, less |
| < $9,717.50> | $422.50 per week in wages paid for 23 weeks |
| $ 6,461.62 | Total wages and overtime, plus |
| $ 6,461.62 | Liquidated damages |
| $12,923.24 | Total damages |

(3) Defendants are jointly and severally liable to Erin Townsend for a total $11,696.96, which includes the following:

| $ 6,380 | 40 regular hours per week at $7.25 per hour for 22 weeks, plus |
|---|---|
| $ 4,308.48 | 18 hours of overtime per week at $10.88 per hour for 22 weeks, less |
| < $4,840> | $220 per week in wages paid for 22 weeks |
| $ 5,848.48 | Total wages and overtime, plus |

$ 5,848.48 Liquidated damages
$11,696.96 Total damages

(4) Defendants are jointly and severally liable to Casi Hudson for a total $22,271.04, which includes the following:

$ 6,380 40 regular hours per week at $7.25 per hour for 22 weeks, plus
$ 7,659.52 32 hours of overtime per week at $10.88 per hour for 22 weeks, less
< $2,904> $132 per week in wages paid for 22 weeks
$ 11,135.52 Total wages and overtime, plus
$ 11,135.52 Liquidated damages
$ 22,271.04 Total damages

(5) Defendants are jointly and severally liable to Nicole Collins for a total $128,211.20, which includes the following:

$ 30,160 40 regular hours per week at $7.25 per hour for 104 weeks, plus
$ 33,945.60 30 hours of overtime per week at $10.88 per hour for 104 weeks
$ 64,105.60 Total wages and overtime, plus
$ 64,105.60 Liquidated damages
$ 128,211.20 Total damages

(6) Defendants are jointly and severally liable to Rachel Hillman for a total $54,881.76, which includes the following:

$ 12,470 40 regular hours per week at $7.25 per hour for 43 weeks, plus
$ 14,970.88 32 hours of overtime per week at $10.88 per hour for 104 weeks
$ 27,440.88 Total wages and overtime, plus
$ 27,440.88 Liquidated damages
$ 54,881.76 Total damages

(7) Defendants are jointly and severally liable to Stacy Jackson for a total $28,644, which includes the following:

$ 7,250 40 regular hours per week at $7.25 per hour for 25 weeks, plus
$ 7,072 26 hours of overtime per week at $10.88 per hour for 25 weeks
$ 14,322 Total wages and overtime, plus
$ 14,322 Liquidated damages
$ 28,644 Total damages

IT IS THEREFORE ORDERED that judgment shall be entered in Plaintiffs' favor for the foregoing amounts, together with post-judgment interest from the date of this judgment until paid as provided by law.

IT IS SO ORDERED THIS 11TH DAY OF SEPTEMBER, 2014.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE